IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WELLS FARGO CLEARING SERVICES, LLC d/b/a WELLS FARGO ADVISORS,
*Plaintiff*,

v.

NELSON MICHAEL POLUN,
*Defendant*.

Civil Action No. ELH-20-3787

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a motion for default judgment, arising from a motion to confirm an arbitration award.

On December 30, 2020, plaintiff Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors ("Wells Fargo") filed a "Motion to Confirm Arbitration Award" against defendant Nelson Michael Polun, a former employee of Wells Fargo. ECF 1.[1] The Motion to Confirm is supported by a memorandum of law (ECF 1-3) (collectively, "Motion to Confirm") as well as a Declaration and five exhibits (ECF 1-2). The arbitration award (the "Award") was issued on May 28, 2020, and concerns Polun's failure to repay financial obligations pursuant to certain promissory notes. ECF 1, ¶¶ 1-6.

In particular, the Motion to Confirm asks the Court to confirm an award of $717,029.54, for the principal amount due and owing, plus prejudgment interest from July 1, 2019 to May 28, 2020, costs, and daily interest in the sum of $115.17 per day from May 28, 2020. *Id*. at 3-4. However, as discussed, *infra*, the Motion to Confirm also identifies a "minor error" in the Award

[1] Jurisdiction is predicated on diversity of citizenship, pursuant to 28 U.S.C. § 1332. ECF 1, ¶¶ 8-11.

with regard to "the breakdown of principal between the notes, and overstates the amount of interest owed by defendant." *Id.* ¶ 7. Plaintiff asks the Court to correct the errors. ECF 1-3 at 1.

Summons was returned executed on January 5, 2021. ECF 7. Accordingly, an answer or other response to the Motion to Confirm was due from Polun by January 26, 2021. As of this date, however, Polun has not responded to the Motion to Confirm.

By Order of February 9, 2021, the Court directed Wells Fargo to submit a status report. ECF 9. In its status report of March 2, 2021, Wells Fargo stated that, "should the Court deem it necessary, Plaintiff is prepared to file a Motion for a Judgment By Default." ECF 10 at 2. Wells Fargo also served the status report on Polun by mail. *See* ECF 12-1, ¶ 7.

Then, on April 22, 2021, the Court ordered Wells Fargo to file, within 17 days of the date of the Order, a motion for clerk's entry of default pursuant to Fed. R. Civ. P. 55(a), or show cause why such action was not appropriate. ECF 11. Accordingly, on May 10, 2021, Wells Fargo filed a "Request to the Clerk of the Court for Entry of Default Against Nelson Michael Polun." ECF 12 ("Request"). The Request was supported by a Declaration and an exhibit. ECF 12-1.

The Clerk entered an order of default as to Polun on July 15, 2021. ECF 13. Of import here, the Clerk issued a "Notice Of Default" to Polun on the same date, advising him that he had 30 days from the date of the Notice of Default to move to vacate. ECF 14. No such motion was filed.

In view of the lack of action in the case, by Order of September 17, 2021, the Court ordered Wells Fargo to file, within 28 days of the date of the Order, a motion for entry of default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), or show cause why such action was not appropriate. ECF 15. Thereafter, Wells Fargo moved for default judgment. ECF 16 (the "Motion for Default Judgment"). The Motion for Default Judgment is supported by the Declaration of Tracey Salmon-

Smith, a lawyer for plaintiff. ECF 16-1. Moreover, it requests entry of judgment against Polun in the amount of $756,716.18, plus interest of $115.17 per day from May 28, 2020, and $400 for the costs of the action. ECF 16 at 2.

Wells Fargo filed a Certificate of Service with the Motion for Default Judgment. ECF 16 at 3. It reflects that the Motion for Default Judgment was mailed to Polun at the address where he was served with the suit. *See* ECF 7. Polun has not responded, and the time for him to do so has expired. *See* Local Rule 105.2.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion for Default Judgment in part and deny it in part.

## I. Background[2]

Wells Fargo is a Delaware limited liability company with its principal place of business located in St. Louis, Missouri. ECF 1, ¶ 9. Polun, a resident of Harford County, Maryland, was previously an employee of Wells Fargo. *Id.* ¶¶ 1, 10.

"As a condition of his employment with Wells Fargo," Polun executed a "Form U-4 application" to the Financial Industry Regulatory Authority ("FINRA")[3] for registration as a "general securities representative." *Id.* ¶ 2. The Form U-4 application contained a "Pre-Dispute Arbitration Clause" ("Clause"), which Polun signed. *Id.*; ECF 1-2 at 5 (Clause signed by Polun).

---

[2] Under the circumstances, I must assume the truth of the facts alleged in the suit, other than those pertaining to damages, as discussed, *infra*. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010).

[3] Under F.R.E. 201, the Court may take judicial notice that FINRA is a "government-authorized not-for-profit organization that oversees" the U.S. broker-dealer industry. *About FINRA*, FINRA, https://www.finra.org/about (last visited Oct. 19, 2021). "A Broker Dealer is in the business of buying or selling securities on behalf of its customers or its own account or both." *Firms We Regulate*, FINRA, https://www.finra.org/about/firms-we-regulate (last visited Oct. 19, 2021).

By signing the Clause, Polun agreed, *inter alia*, to arbitrate "any dispute, claim, or controversy that may arise between [Polun] and [his] firm, or a customer, or any other person that is required to be arbitrated under the rules" of FINRA. *Id*. The Clause warned Polun: "This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed." *Id*. "Defendant further agreed in his U-4 that any arbitration award rendered against him could be entered as a judgment in any court of competent jurisdiction." ECF 1, ¶ 2.

FINRA's Code of Arbitration Procedure for Industry Disputes (the "Code") regulates FINRA arbitration proceedings such as this one. *See Code of Arbitration Procedure for Industry Disputes*, FINRA, https://www.finra.org/rules-guidance/rulebooks/finra-rules/13000#the-rule (last visited Oct. 21, 2021). Of relevance here, FINRA Rule 13200 provides: "Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among" members; members and associated persons; or associated persons. ECF 1-2 at 7.[4]

As described in the Award, Wells Fargo loaned funds to Polun, as evidenced by three different promissory notes: one dated October 3, 2014 ("Note 1"); a second dated January 1, 2016 ("Note 2"); and a third dated January 1, 2017 ("Note 3"). ECF 1-2 at 9. The total principal balance due and owing on these three notes was $717,029.54. *Id*. That sum is consistent with the Award. However, according to the Motion to Confirm, "a set-off was applied, resulting in Defendant owing [a total of] $717,029.54 on two notes, Note 1 and Note 3," and not the three notes. ECF 1, ¶ 3. Specifically, in light of the set-off, Polun owed $703,533.66 on Note 1 and $13,495.88 on

[4] References in this Memorandum Opinion to a particular "FINRA Rule" refer to rules within the Code.

Note 3. ECF 1-2 at 14, 17; ECF 1-3 at 2. But, the Award determined that the monies were due based on three notes, not two. ECF 1-2 at 10-11.

Polun's employment with Wells Fargo ended on July 1, 2019. ECF 1-2 at 9. At this point, the notes immediately became due. *Id*. But, Polun failed to repay Wells Fargo, "despite multiple written demands." *Id*.

Under FINRA Rule 13200, "the claims asserted by Wells Fargo were subject to arbitration in FINRA." ECF 1, ¶ 2. Accordingly, on February 18, 2020, Wells Fargo filed a Statement of Claim against Polun with FINRA to begin the arbitration process regarding the payment due on the promissory notes. *Id*. ¶ 4. Wells Fargo asserted claims of breach of promissory note and conversion of loan funds. ECF 1-2 at 9. According to the Award, plaintiff requested an award of $717,029.54, "the principal balance due and owing as of December 20, 2019;" interest on the balance due for each note at a rate of 5.85% per annum for Note 1, 5.62% per annum for Note 2, and 5.71% per annum for Note 3 from the date of default to the date of payment; "post-hearing interest at the Maryland statutory rate of 10%, pursuant to MD Cts & Jud Pro Code § 11-107;"[5] the costs of collection and the proceeding, including attorneys' fees; and any and all further relief the arbitrator deemed just and proper. ECF 1-2 at 9-10.

The Award notes that Polun was served with a Claim Notification letter, Overdue Notice, and Notification of Arbitrator in the arbitration proceeding. *Id*. at 10. However, Polun did not file an Answer to Wells Fargo's Statement of Claim (ECF 1, ¶ 5), or ever enter an appearance in the

[5] Md. Code (2020 Repl. Vol.), § 11-107 of the Courts and Judicial Proceedings Article ("C.J.") provides, in relevant part: "Except as provided in § 11-106 of this subtitle, the legal rate of interest on a judgment shall be at the rate of 10 percent per annum on the amount of judgment." *Id*. § 11-107(a). This issue is discussed further, *infra*.

proceeding. ECF 1-2 at 9. The arbitrator determined that Polun was bound by the arbitrator's determination. *Id*. at 10.

In Baltimore, ECF 1-2 at 9; ECF 1, ¶ 11, the arbitrator issued an Award in favor of Wells Fargo on May 28, 2020, finding Polun liable for the total sum of $717,029.54 based on the three notes. *Id*. at 10; ECF 1, ¶ 6. The specific amounts for each note were $453,660.82 on Note 1, $123,149.19 on Note 2, and $140,219.53 on Note 3. ECF 1-2 at 10. The Award also found Polun liable for interest on the amount due for each note, "from July 1, 2019 through and including the date this Award is paid in full," at the rates of 5.85% per annum for Note 1, 5.62% per annum for Note 2, and 5.71% per annum for Note 3. *Id*. at 10-11. And, the Award found Polun liable for $1,550 in total costs, including $1,250 to reimburse Wells Fargo for the non-refundable portion of its filing fee and $300 to reimburse Wells Fargo for a "paper decision fee." *Id*. at 11. Further, the Award provided: "Any and all relief not specifically addressed herein, including any requests for attorneys' fees, are denied." *Id*. at 11.

While reviewing the Award in October 2020, counsel for plaintiff realized that it contained a "minor error in that it misstates the breakdown of principal between the notes, and *overstates* the amount of interest owed by the Defendant." ECF 1-2 at 2 (emphasis added). The Motion to Confirm explains: "While Defendant is liable to Wells Fargo for $717,029.54 in compensatory damages, that amount represents the principal from two notes (not three notes) and therefore interest is only owed on two notes, not three. The principal on Note 1 is $703,533.66 and the principal on Note 3 is $13,495.00, for a total of $717,029.54. Accordingly, interest is only owed on these two notes." ECF 1, ¶ 7.

By letter to FINRA on October 5, 2020, counsel for plaintiff sought a correction of the Award. ECF 1-2 at 2, 14-15. FINRA forwarded the letter to the arbitrator, and Wells Fargo

submitted additional information to FINRA, as sought by the arbitrator. *Id*. at 2. However, no decision was apparently issued within ten days of FINRA forwarding the letter, meaning the request was deemed denied. *Id*. Nevertheless, the Motion to Confirm seeks to confirm the Award at the corrected amount (ECF 1 at 3), and the Motion for Default Judgment seeks judgment for this amount (ECF 16 at 2). As indicated, the Motion to Confirm "requests that the Court correct these minor errors when it confirms the Award." ECF 1-3 at 1.

This suit followed. ECF 1. Additional facts are included, *infra*.

## II. Standard of Review

This case involves an arbitration award in the context of a motion for default judgment. Rule 55(b) of the Federal Rules of Civil Procedure governs default judgments. In particular, Rule 55(b)(1) provides that the clerk must enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation." But, "[a] plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise the complaint must be supported by affidavit or documentary evidence. *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (Grimm, M.J).[6]

As noted, plaintiff seeks to confirm the arbitration award by way of a default judgment. The United States Court of Appeals for the Fourth Circuit has a "strong policy favoring the disposition of cases on the merits . . . ." *Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 229 (4th Cir. 2019) (discussing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)), *cert. denied*, 139 S. Ct. 2762 (2019); *see Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013). But, that policy is not absolute. Default judgment "'is appropriate when the

[6] Judge Grimm now serves as a United States District Judge. But, he authored *Monge* when he was a United States Magistrate Judge.

adversary process has been halted because of an essentially unresponsive party.'" *Garnier-Thiebaut, Inc. v. Castello 1935 Inc.*, SDT-17-3632, 2019 WL 6696694, at *1 (D. Md. Dec. 6, 2019) (Thacker, J.) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013)); *see SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

When a defendant does not respond to the suit, the plaintiff's factual allegations are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (stating that the court must "determine whether the well-pleaded allegations . . . support the relief sought"). But, "'a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" *Ryan*, 253 F.3d at 780 (citation omitted). The court must assess whether the undisputed factual allegations constitute a legitimate cause of action. *Id.*; *see* 10A Wright & Miller, Federal Practice and Procedure § 2688 (4th ed., 2020 Supp.) ("[L]iability is not deemed established simply because of the default . . . . the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

When, as here, a motion for default judgment is based on an application for confirmation of an arbitration award, the plaintiff "'must show that it is entitled to confirmation of the arbitration award as a matter of law.'" *Choice Hotels Int'l, Inc. v. Khan*, DKC-17-3572, 2018 WL 1046301, at *2 (D. Md. Feb. 26, 2018) (quoting *United Cmty. Bank v. Arruarana*, No. 1:10cv248, 2011 WL 2748722, at *2 (W.D.N.C. July 13, 2011)). Numerous cases in this District reflect that a motion for default judgment is the appropriate means to resolve a motion to confirm an arbitration award for which there has been no response from the defendant. *See, e.g., Choice Hotels Int'l, Inc. v. Sita Corp.*, GJH-20-189, 2021 WL 615078 (D. Md. Feb. 17, 2021); *Knightsbridge, LLC v. DKW*

*Communications, Inc.*, PX-19-2381, 2020 WL 1638407 (D. Md. Apr. 2, 2020); *Climbzone, LLC v. Washington*, GJH-18-2732, 2020 WL 674353 (D. Md. Feb. 10, 2020); *Choice Hotels Int'l, Inc. v. Joseph Group, LLC*, PWG-18-2596, 2019 WL 3020929 (D. Md. July 10, 2019); *Choice Hotels Int'l, Inc. v. Yoon*, TDC-18-2043, 2019 WL 979153 (D. Md. Feb. 27, 2019); *Young v. Brahmbatt*, PWG-15-3290, 2017 WL 2876476 (D. Md. July 6, 2017); *Choice Hotels Int'l, Inc. v. Walia*, TDC-16-2923, 2017 WL 395102 (D. Md. Jan. 27, 2017); *Choice Hotels Int'l, Inc. v. Mander*, GJH-14-3159, 2015 WL 1880277 (D. Md. Apr. 22, 2015); *Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, DKC-11-2893, 2012 WL 5995248 (D. Md. Nov. 29, 2012).

If the court is satisfied that liability has been established, it must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81. Allegations "relating to the amount of damages" are not deemed admitted based on a defendant's failure to respond to a suit. Fed R. Civ. P. 8(b)(6); *see Monge*, 751 Supp. 2d at 794; *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010). "[U]nless the amount of damages is certain," *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001), the court "must make an independent determination regarding such allegations." *Agora Fin., LLC*, 725 F. Supp. 2d at 494; *see Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir.1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). A hearing is not required, however, so long as there is an adequate evidentiary basis in the record to support an award of the requested damages. *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 374 (D. Md. 2012) ("While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on 'detailed affidavits or documentary evidence to determine the appropriate sum.'") (quoting *Adkins*, 180 F. Supp. 2d at 17); *see Monge*, 751 F. Supp. 2d at 795.

Notably, under Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." "When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). This is because the amount sought as damages might influence the defendant in deciding whether to expend the resources to defend the action. *Monge*, 751 F. Supp. 2d at 796.

## III. Discussion

### A. Liability

As noted, in the context of a motion to confirm an arbitration award, a plaintiff seeking default judgment must "'must show that it is entitled to confirmation of the arbitration award as a matter of law.'" *Khan*, 2018 WL 1046301, at *2 (quoting *United Cmty. Bank*, 2011 WL 2748722, at *2).

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 9, provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.

*See also Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 195, 197-204 (2000) (holding the FAA's venue provisions are permissive and that a motion to confirm an award may also be made in any district proper under the general venue statute).

Section 10 of the FAA, 9 U.S.C. § 10, enumerates the grounds under which an award may, "upon the application of any party to the arbitration," be vacated by a district court:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Section 11, 9 U.S.C. § 11, outlines the context in which the district court may modify or correct an award, "upon the application of any party to the arbitration:"

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

Judicial review of an arbitration award is exceedingly deferential. "[T]he scope of review of an arbitrator's valuation decision is among the narrowest known at law." *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998). "Federal courts may vacate an arbitration award only upon a showing of one of the grounds listed in the Federal Arbitration Act, or if the arbitrator acted in manifest disregard of law." *Id*. at 193. When reviewing an arbitration award, "[a] court sits to 'determine only whether the arbitrator did his job—not

whether he did it well, correctly, or reasonably, but simply whether he did it.'" *Wachovia Securities, LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012) (citations omitted). This is in service of the FAA's "comprehensive scheme to replace judicial hostility to arbitration with a national policy favoring it." *Wachovia Securities, LLC*, 671 F.3d at 478.

The standards outlined above support confirmation of the arbitration award. Wells Fargo and Polun entered into an agreement by which FINRA would arbitrate disputes such as the one at issue in this case, pursuant to Polun's Form U-4 application, the Clause, and the Code. ECF 1, ¶ 2; ECF 1-2 at 5, 7. The Form U-4 application provided that any arbitration award rendered against Polun could be entered as a judgment in any court of competent jurisdiction (ECF 1, ¶ 2); *see also* FINRA Rule 13904(a) (providing that arbitration awards "may be entered as a judgment in any court of competent jurisdiction").

Wells Fargo has properly filed the Motion to Confirm with this Court under 9 U.S.C. § 9, as the Award was made in Baltimore. ECF 1-2 at 9; ECF 1, ¶ 11. Moreover, the Motion to Confirm was filed on December 30, 2020 (ECF 1), within one year of the date the Award was made, May 28, 2020. *Id*. ¶ 6. And, as discussed, the defendant has received notice of both the arbitration proceeding and this action.

Notably, Polun has not moved to vacate the Award or the Clerk's entry of default. As to the Award, "neither misapplication of principles of contractual interpretation nor erroneous interpretation of the agreement in question constitutes grounds for vacating an award." *Apex Plumbing Supply*, 142 F.3d at 194. "There has been no showing of the narrow grounds listed in the FAA for vacatur of the arbitration award, nor is there any suggestion that the arbitrator acted in manifest disregard of the law." *Jai Shree Navdurga, LLC*, 2012 WL 5995248, at *3.

To be sure, Wells Fargo has identified a "minor error" in the Award. ECF 1, ¶ 7. But, this does not approach the level required to vacate the Award. Accordingly, Wells Fargo has demonstrated an entitlement to confirmation of the Award.

Wells Fargo has also established entitlement to a default judgment. But, "[i]n the interest of justice," Wells Fargo has asked the Court to correct the Award to address the "minor error," discussed earlier. ECF 1-3 at 1. Curiously, the memorandum contains little briefing on the Court's power to do so.

Section 11 of the FAA authorizes the Court to correct an arbitration award in certain contexts. Under § 11(a), the Court may correct "an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." Also of relevance, § 11(c) permits the Court to correct an award "[w]here the award is imperfect in matter of form not affecting the merits of the controversy." This provision relates to an award that "suffers from a scrivener's error or that otherwise does not deliver on the arbitrator's stated purpose in granting relief." *Grain v. Trinity Health, Mercy Health Services Inc.*, 551 F.3d 374, 379 (6th Cir. 2008).

In general, the ability of the Court to make such corrections is quite limited. "[C]ourts have held generally that even a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award." *Apex Plumbing Supply*, 142 F.3d at 194. A miscalculation, likewise, is not "evident" unless it appears on the face of the award. *Id*. At the same time, the Fourth Circuit has said that a district court has the power under § 11 "to do equity and justice," even when an "evident material mistake" is attributable to one or both parties to the arbitration. *Transnitro, Inc. v. M/V Wave*, 943 F.2d 471, 474 (4th Cir. 1991).

Wells Fargo repeatedly emphasizes that it seeks correction of a minor error to its own detriment; that is, correction of the Award will slightly benefit Polun. *See* ECF 1, ¶ 7; ECF 1-2 at 2, 14; ECF 1-3 at 1 n.2; ECF 12-1, ¶ 12. In the context of a motion for default judgment, it is neither just nor equitable to leave an arbitration award uncorrected in favor of the plaintiff when even the plaintiff seeks correction of the award in favor of the defendant. The Award states the correct principal balance owed by defendant on the notes, but there is "an evident material mistake in the description of" the notes for which the sums are due and owing, and the amounts owed on each note. The correction will "effect the intent thereof and promote justice between the parties." *Id*. § 11.

Thus, I will grant Wells Fargo's request to correct the Award. The Award will be corrected as described in counsel's letter to FINRA (ECF 1-2 at 14-15), to reflect that $703,533.66 is owed on Note 1, at a 5.85% per annum interest rate; $13,495.88 is owed on Note 3, at a 5.71% per annum interest rate; and no amount is owed on Note 2.

**B. Damages**

The Court turns to the issue of damages. Wells Fargo seeks three categories of damages: a fixed sum of $756,716.18, representing the loan amounts plus prejudgment interest from July 1, 2019 to May 28, 2020; daily interest at $115.17 per day, beginning May 28, 2020 until the Award is paid in full; and $400 in costs for the action. ECF 1 at 3; ECF 1-3 at 2-3; ECF 16 at 2. I address each, in turn.

**1. Compensatory Amount**

Wells Fargo requests a compensatory award totaling $756,716.18. ECF 16 at 2. This sum is derived from three sources. First, it includes the amount of the principal owed by Polun to Wells Fargo: $717,029.54. *See* ECF 1, ¶¶ 3, 6. Second, it includes prejudgment interest of $38,136.64,

incurred from July 1, 2019, when the loans became due, to May 28, 2020, when the Award was made. ECF 1 at 2; ECF 1-2 at 10-11, 17; ECF 1-3 at 2-3; ECF 12-1, ¶ 13. And third, it includes $1,550 in costs from the arbitration proceeding. ECF 1-2 at 11; ECF 1-3 at 3.

Wells Fargo is entitled to a judgment for all three of these items. The principal of $717,029.54, the prejudgment interest, and the $1,550 in costs all appear on the face of the Award and are well supported. And, given the correction of the Award, as discussed, the award of prejudgment interest aligns with what is requested by Wells Fargo. Therefore, the Court will award $717,029.54 in principal, as awarded by the arbitrator; prejudgment interest of $38,136.64, which is consistent with the interest rates specified by the arbitrator and for the notes, as corrected; and arbitration costs of $1,550, as awarded, for a total of $756,716.18 in damages, as requested by Wells Fargo.

**2. Daily Interest**

The Award provides that defendant is liable for interest, at specified rates, until the "Award is paid in full." ECF 1-2 at 10-11. The Motion for Default Judgment requests daily interest in the amount of $115.17 per day, beginning May 28, 2020—the date of the Award—and continuing until the Award is paid in full.

In general, the award of interest is proper in the context of confirming an arbitration award. *See, e.g.*, *Climbzone, LLC*, 2020 WL 674353, at *4 (awarding 10% prejudgment interest on the basis of an arbitration award); *Young*, 2017 WL 2876476, at *1, 3 (awarding 6% prejudgment and post-judgment interest under FINRA arbitration award). But, any such award must be premised in the arbitration award or otherwise founded in law. *See Climbzone, LLC*, 2020 WL 674353, at *4 ("The Court will decline to grant [a request for post-judgment interest beyond the statutory rate]

because the Arbitration Award made no provisions for post-judgment interest and Plaintiff has offered no reason why it should accrue at that rate.").

Wells Fargo has not provided an adequate basis for interest of $115.17 per day, commencing May 28, 2020. There is no discussion in the Award of this sum. Wells Fargo's submissions suggest that this sum has been calculated on the basis of C.J. § 11-107, which provides for an interest rate of 10% per annum on a judgment. ECF 1-2 at 18. This would be consistent with Wells Fargo's request at arbitration for "post-hearing interest at Maryland's statutory rate of 10%, pursuant to MD Cts & Jud Pro Code § 11-107." *Id*. at 10.

But, the Award never granted that request. Rather, the Award granted post-award interest at the interest rates of 5.85% for Note 1, 5.62% for Note 2, and 5.71% for Note 3, as discussed. *Id*. at 10-11. And, the Award provides that "[a]ny and all relief not specifically addressed herein . . . are [sic] denied." *Id*. at 11.

Nor does C.J. § 11-107 otherwise furnish a basis for awarding 10% interest prior to the entry of a judgment. C.J. § 11-107 permits post-judgment interest, meaning "[a]fter a trial court enters judgment in a plaintiff's favor against a defendant." *Ben-Davies v. Blibaum & Associates, P.A.*, 457 Md. 228, 230-31, 177 A.3d 681, 682 (2018). "[S]tate law applies to questions involving prejudgment interest in diversity cases." *United States v. Dollar Rent A Car Systems, Inc.*, 712 F.2d 938, 940 (4th Cir. 1983). In Maryland, the prejudgment interest rate is 6% per annum, not 10%, unless the parties have contracted or agreed to another rate. *See Wickersham Constr. and Engineering, Inc. v. Town of Sudlersville*, CCB-16-4087, 2020 WL 5642106, at *15 (D. Md. Sept. 22, 2020); *Knightsbridge, LLC*, 2020 WL 1638407, at *2. And, as for post-judgment interest, the relevant federal statute, 28 U.S.C. § 1961, applies rather than state law, even in diversity actions. *See Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir. 1989).

Moreover, using the 10% interest rate contemplated in C.J. § 11-107, the sum exceeds $115.17 per day.[7] Nor do the other options—such as a 6% rate, the interest rates specified in the Award, or Wells Fargo's correction taking into account the set-off—support such an amount. When determining damages, it is not appropriate for the Court to guess at what was intended.

In the face of this lack of clarity as to the basis for the sum, the Court declines to grant a default judgment for the requested amount of $115.17 in interest per day, beginning May 28, 2020 until payment of the Award. The corrected Award explicitly provides for interest at a rate of 5.85% per annum for Note 1 and 5.71% per annum for Note 3, beginning May 28, 2020, until the date the Award is paid in full.[8] ECF 1-2 at 10-11; *see also* FINRA Rule 13904(j) ("Interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, *or at a rate set by the arbitrator(s)*." (Emphasis added)). Accordingly, I will enter judgment for the interest described in the Award, as corrected, beginning May 28, 2020, until the date of judgment by this Court.

---

[7] Judge Hazel gave the basic formula in *Climbzone, LLC*, 2020 WL 674353, at *4, in a comparable context: the per diem interest rate for a 10% per annum rate is "calculated by dividing the 10 percent per annum interest rate by 365 days to calculate a daily interest rate and multiplying that amount by the total award amount." Here, performing such a calculation—10% divided by 365, and multiplied by the principal amount of $717,029.54—yields a daily sum of roughly $196.45.

A "Postjudgment Interest" spreadsheet provided by Wells Fargo indicates that Wells Fargo first applied the 10% rate to determine the amount of interest for the period between May 28, 2020 and December 28, 2020, which was shortly before this action was filed. ECF 1-2 at 18. As the spreadsheet notes, this period is 214 days, or 58.63% of the year. *Id*. Plaintiff took the principal amount ($717,029.54), divided it by ten, and then multiplied the result by .5863 to produce the amount of post-judgment interest appropriate at a 10% rate for this period: $42,039.44. *Id*. Then, the spreadsheet suggests that plaintiff divided this number by 365 to arrive at the $115.17 figure, even though the total was only for 214 days. *Id*. The sum of $115.17 is, under the formula above, the correct daily sum for a per annum interest rate of 5.863%.

[8] The Award provides for this interest beginning at the date of default, which was July 1, 2019, but the period between July 1, 2019 and May 28, 2020 has already been addressed.

The Award refers to payment of interest "until the Award is paid in full." ECF 1-2 at 10-11. The Motion for Default Judgment likewise requests interest at the asserted amount "until paid." ECF 16 at 2. However, the general principle is that, once an arbitration award is confirmed, the plaintiff is entitled to post-judgment interest on the entire judgment at the rate provided by the federal statute, 28 U.S.C. § 1961, rather than any post-award interest specified in the award. *See, e.g., BAM Capital, LLC v. Houser Transport, Inc.*, No. 5:19-CV-00105, 2019 WL 6208553, at *2-3 (W.D.N.C. Nov. 20, 2019) (granting statutory rate rather than rate set in promissory note under arbitration); *RONCO Consulting Corp. v. Leading Edge Ventures, LLC*, PWG-17-305, 2017 WL 6336609, at *8 (D. Md. Dec. 12, 2017) (deferring to statutory rate in award confirmation); *Goldman, Walker, LLC v. Shahab,* GJH-13-3698, 2015 WL 306746, at *6 (D. Md. Jan. 22, 2015) (granting statutory rate rather than rate set in award until principal paid); *Regale, Inc. v. Thee Dollhouse Productions N.C., Inc.*, No. 5:10-CV-280, 2011 WL 552184, at *1 (E.D.N.C. 2011) (amending order confirming award to grant post-judgment interest at statutory rate rather than prejudgment rate specified by arbitrators); *United Community Bank v. McCarthy*, No. 1:10-CV-10, 2010 WL 2723726, at *3 (W.D.N.C. 2010). "[A]warding post-judgment interest on the entire amount the court awarded . . . including pre-judgment interest, most closely comports with the purpose of post-judgment interest articulated by the Supreme Court." *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1031 (4th Cir. 1993).

The Fourth Circuit, in line with other circuits, has said that parties may stipulate to a different rate for post-judgment interest, but only if they have "first 'specif[ied] a post-judgment interest rate' using 'clear, unambiguous and unequivocal language.'" *Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Group, Inc.*, 501 F. App'x 247, 254 (4th Cir. 2012) (quoting *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004)). Thoroughly discussing

an equivalent standard in the context of arbitration, the Fifth Circuit has held that the standard requires an arbitration award expressly to grant "postjudgment interest." *Tricon Energy Ltd. v. Vinmar Intern., Ltd.*, 718 F.3d 448, 458-60 (5th Cir. 2013). Conversely, "boilerplate language" in an award granting interest "'until paid'" does not demonstrate an intent to supersede the statutory rate. *Id*. Other circuits have likewise favored the statutory post-judgment rate over rates specified in awards. *See, e.g.*, *Fidelity Federal Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004) (noting that generally, "once an arbitration award is confirmed in federal court, the rate specified in § 1961 applies . . . even if the arbitration award purported to grant post-judgment interest"); *Westinghouse Credit Corp.*, 371 F.3d at 101-03.

The Award makes no express mention of post-judgment interest, but merely refers to interest "through and including the date this Award is paid in full." ECF 1-2 at 10-11. And, there is no other indication of an intent to depart from the statutory post-judgment rate. Therefore, insofar as plaintiff seeks post-judgment interest, the rate specified in 28 U.S.C. § 1961 is appropriate. And, "the court need not specifically grant an award of post-judgment interest because Plaintiff is entitled to recover such interest by operation of law." *Jai Shree Navdurga, LLC*, 2012 WL 5995248, at *3).

**3. Costs of the Action**

Finally, in the Motion for Default Judgment, Wells Fargo seeks $400 in costs for the action (as opposed to the costs discussed, *supra*, for the arbitration proceeding). ECF 16 at 2. However, Wells Fargo did not seek this type of damages anywhere in its original Motion to Confirm. *See* ECF 1. Therefore, I decline to award Wells Fargo $400 in costs. *See, e.g.*, *Mander*, 2015 WL 1880277, at *4; *Choice Hotels Int'l, Inc. v. Austin Area Hosp., Inc.*, TDC-15-0516, 2015 WL

6123523, at *3 (D. Md. Oct. 14, 2015); *Jai Shree Navdurga, LLC*, 2012 WL 5995248, at *3 (all reaching the same conclusion).

## IV. Conclusion

In view of the foregoing, I shall grant the Motion for Default Judgment, in part. I shall confirm the Award and grant Wells Fargo's request to correct the Award. Default judgment shall be entered against Polun in the principal sum of $717,029.54; prejudgment interest at the rate of 5.85% per annum on Note 1 and 5.71% per annum on Note 3, as described in the corrected Award, for the period between July 1, 2019 and May 28, 2020, totaling $38,136.64; $1,550 in arbitration costs, for a total of $756,716.18; and beginning May 28, 2020, until the date of the entry of judgment by this Court, interest at the rate of 5.85% per annum on Note 1 and 5.71% per annum on Note 3, as described in the corrected Award,.

An Order follows, consistent with this Memorandum Opinion.

Date: October 29, 2021

/s/
Ellen Lipton Hollander
United States District Judge